PONDER, Justice.
The plaintiff brought suit against the defendant seeking to recover $2,782.29 with 5% per annum interest and 10% as attorneys fees. The lower court rejected his demand and he has appealed.
In this suit the plaintiff is seeking to recover under three surety 'bonds in the amount of $2,000.00, $2,000.00 and $1?-000.00 respectively insuring the plaintiff against larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication and other fraudulent or dishonest acts that might be committed by Lawerence Ebarb, Fred Rivers, and Henry F. Martin. The basis of the suit is that Ebarb, Rivers and Martin committed fraudulent and/or dishonest acts causing the plaintiff a loss of $1,082.29, $1,-000.00, and $700.00 respectively. After filing various pleas to the suit the defendant answered denying any liability under the bonds. The evidence shows that the plaintiff advanced Ebarb $1,000.00; Rivers $1,-000.00 and Martin $700.00 to buy ties for him and that the parties were to receive a commission of 3‡ per tie purchased for the plaintiff.
An examination of the evidence reveals no fraud or dishonest act on the part of the tie buyers. It appears that these parties were unable to return the money when it was demanded. Martin could not return the money because of losses suffered from bad business deals and because he had loaned money to various persons. Ebarb could not return the money because of losses resulting from consistent down grading on the ties and because of the payment of bank charges on many small checks. Rivers claimed that the plaintiff had breached his contract by refusing to accept certain ties which he had manufactured. He claims the plaintiff is indebted to him for the breach of contract. The pertinent portion of the surety bonds are the same and provide as follows:
“In consideration of an annual premium, the AMERICAN SURETY COMPANY of NEW YORK Surety will pay J. H. Riggs, Shreveport, Louisiana, Employer, not exceeding Two Thousand and No/100 Dollars ($2,000.00) for loss of money or property (including that for which the Employer is responsible) sustained through Larceny, Theft, Embezzlement, Forgery, Misappropriation, Wrongful Abstraction, Wilful Misapplication or other fraudulent or dishonest acts committed by - Employee in any position, alone or in collusion, while coverage is in force * *
Counsel for the appellant concedes that no question of larceny, theft or forgery is presented. He contends that there has been a wrongful abstraction, a misapplication and misappropriation of the funds. It might be observed that his suit is based on *413 the ground that he suffered loss because of fraudulent and/or dishonest acts of the tie buyers. Without commenting on the pertinency of the decisions cited from other jurisdictions, it is sufficient to say that under the decisions of one of the appellate courts of this state and a decision of this court that the plaintiff is not entitled to recover under these bonds when no fraud or dishonest acts have been proved.
In Cresent Cigar & Tobacco Co. v. National Casualty Co., La.App. 155 So. 505, the plaintiff, upon discovering that an employee had failed to account for certain merchandise, brought suit on a fidelity bond wherein the surety bound itself for any loss sustained through “any act or acts of Fraud, Dishonesty, Forgery, Theft, Embezzlement, Wrongful Abstraction or Willful Misapplication committed by any employee.” The court pointed out that there could be no recovery unless dishonest acts had been proved. Recovery was denied because dishonest acts had not been proved. The court stated therein that a policy insuring against dishonest acts affords no protection against loss resulting from carelessness, noncriminal stock shortages, or other losses not due to dishonesty. Many authorities were cited to support the court’s •conclusion.
In the case of Curran & Treadaway, Inc. v. American Bonding Co. of Baltimore, 193 La. 763, 192 So. 335, 337, this court had occasion to entertain a surety bond issued to protect an employer against any loss sustained through any act of larceny- or embezzlement committed by an employee. In that case this court made the following pronouncement and cited many authorities to support it, viz.: “It is to be observed that while every act of embezzlement involves a shortage, every shortage does not involve an act of embezzlement. A shortage in the accounts of an employee causing loss to an employer may result from mistake, disobedience of orders, or bad judgment, and not from any wrongful intent on the part of the employee. Thus, it has been held that an employee who becomes indebted to his employer through mistake or carelessness, or using funds of the employer for his personal use with no intent to defraud, is not guilty of embezzlement 'and therefore of a dishonest act within the meaning of a fidelity bond.”
It also quoted with approval the rule stated in Couch’s Cyclopedia of Insurance Law, vol. 5, sec. 1199, p. 4355, as follows: “But a fidelity bond indemnifying against loss by any act of fraud or dishonesty on the part of a bonded employee, covers only loss from acts of fraud or dishonesty. And loss must be actually suffered by the employer in order to warrant recovery on a bond conditioned against the dishonesty of an employee. Nor does the mere fact that a shortage is found justify a finding of fraud and dishonesty. For instance, a bond guaranteeing against loss by fraud or' dishonesty does riot cover a mere indebted *415 ness of the employee to the employer. And a mere technical diversion of funds does not constitute personal dishonesty.”
For the reasons assigned, the judgment is affirmed at appellant’s cost.